Filed 6/14/23  Zang v. Xu CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| YANBIN ZANG,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUN XU et al.,<br><br>    Defendants and Appellants. | B311357<br><br>Los Angeles County<br>Super. Ct. No.<br>20GDCV00485 |

APPEALS from orders of the Superior Court of Los Angeles County, Ralph C. Hofer, Judge. Affirmed.

Liang Ly and Jason L. Liang for Defendants and Appellants Jun Xu, Joanie Yan, and J & C International Group, LLC.

FTW Law Group and Felix T. Woo for Defendants and Appellants Qi Shen, ZHL Management, Inc., HZV Holding, Inc., and Hong Kong Supermarket.

Jones, Davis & Jackson, Gary M. Jackson; Robin Min Chung Hou for Plaintiff and Respondent.

————————————

# INTRODUCTION

Plaintiff and respondent Yanbin Zang (plaintiff) is a Chinese national who came to the United States on a tourist visa in September 2018. He hopes to immigrate to the United States and sought assistance from the defendants and appellants—a handful of individuals and related companies (collectively, defendants) that purport to provide immigration and investment services to wealthy Chinese nationals.[1] Plaintiff generally alleges that defendants promised to obtain a visa and green card for him based on a $500,000 investment he made with them. But in reality, plaintiff contends, defendants deceived him about the nature of the investment, the basis for his visa application, and other related matters. He also contends that his visa application—which defendants concealed from him—was riddled with fraudulent statements and that his signature on the application was forged. As a result, plaintiff's immigration status is at risk.

Plaintiff filed the instant lawsuit against defendants, asserting claims for violation of the Immigration Consultants Act, fraudulent misrepresentation, fraudulent concealment, breach of fiduciary duty, and unfair competition. Defendants, organized into two groups, filed special motions to strike the operative

---

[1] The defendants and appellants are Jun Xu, Joanie Yan, J & C International Group, LLC, Qi Shen, ZHL Management, Inc., and Hong Kong Supermarket. Defendant HZV Holding, Inc., is listed as an appellant on the opening and reply briefs as well as the notice of appeal filed by the attorney for Qi Shen. However, defendants state that HZV Holding is no longer pursuing its appeal because the trial court sustained a demurrer as to the only cause of action asserted against this defendant.

complaint under Code of Civil Procedure section 425.16.[2] Generally, defendants asserted that filing a petition with the United States Citizenship and Immigration Services (Immigration Service) is statutorily protected petitioning activity and that plaintiff's claims lack the minimal merit required to survive an anti-SLAPP motion.

The trial court denied both motions and defendants appeal. Although the court agreed with defendants that filing an immigration petition is protected activity, it found that the majority of plaintiff's allegations related to unprotected activities such as concealing the petition, misrepresenting the basis of the petition, and misleading plaintiff with respect to his investment. Further, and to the extent that any of the allegations implicated activity protected under section 425.16, the court found plaintiff's evidence sufficient to overcome defendants' motions. We affirm the orders denying the special motions to strike.

## FACTS AND PROCEDURAL BACKGROUND

### 1.    Immigration and Investment Plan

Plaintiff is a Chinese national. He arrived in California on a tourist visa in September 2018 and hopes to immigrate to the United States. To that end, after plaintiff arrived in the Los Angeles area, he contacted defendant Meiju Group, LLC, a company he understood to offer immigration services to Chinese nationals. In late September 2018, he met with defendant David Chang at Meiju Group's offices. Chang advised plaintiff that he

---

[2] All undesignated statutory references are to the Code of Civil Procedure.

3

could obtain a green card[3] if he made investments in the United States and suggested an investment opportunity involving defendant Hong Kong Supermarket. Specifically, Chang took plaintiff to the Hong Kong Supermarket location in Monterey Park and represented that plaintiff could use that market as an investment to obtain his green card. Plaintiff signed an agreement retaining Meiju Group and Chang as "migration agents" and transferred $120,000 to a bank account at Chang's direction.

Chang introduced plaintiff to defendant Jun Xu, who Chang represented was the owner of Hong Kong Supermarket. Plaintiff met with Xu and Chang in early October 2018. Xu told plaintiff that he could obtain an L-1A work visa and ultimately a green card by investing in Hong Kong Supermarket. Xu implied that he had a personal connection with an immigration officer to facilitate the matter. In addition, Chang and Xu advised plaintiff that defendant J & C International Group, LLC (J & C) was a company that provided cross-border investment opportunities and had been providing investment management and immigration services to high net-worth Chinese nationals since 2015.

At Xu's request, plaintiff signed a service contract with J & C, which plaintiff was told would replace his agreement with Meiju Group. Xu advised plaintiff that, pursuant to the service contract, plaintiff would have the right to supervise and manage

_____

[3] Having a green card (officially known as a Permanent Resident Card) allows you to live and work permanently in the United States. (<https://www.uscis.gov/green-card> [as of June 13, 2023], archived at <https://perma.cc/4BJ2-9JM3>.)

4

the company in which he invested, and that he would work at the company and receive a salary. Plaintiff promised to invest $500,000 in Hong Kong Supermarket and pay J & C for immigration services; J & C guaranteed that plaintiff would receive either a green card or a refund of his investment. J & C also promised that it would provide immigration services in strict compliance with applicable laws and regulations. At Xu's direction, plaintiff transferred $500,000 to defendant HZV Holding, Inc., which Xu represented as his company's investment arm.

After plaintiff signed the service contract with J & C and transferred the funds to HZV Holding, Xu introduced plaintiff to defendant Joanie Yan. Xu told plaintiff that Yan would prepare his L-1A work visa application and plaintiff provided Yan with various supporting documents including a copy of his passport and his tourist visa application. Yan assembled the materials under the direction of defendant James Yang, an attorney retained to submit the visa application on behalf of defendant ZHL Management, Inc.

In late April 2019, plaintiff learned that his visa application had been approved. Specifically, he received a copy of a notice sent from the Immigration Service to Yang at the office of his law firm, defendant Pegasus Law Group. The notice was addressed to ZHL Management, Inc., which was designated as plaintiff's employer and the petitioner for the visa. Plaintiff subsequently contacted Xu, Yan, and Chang on multiple occasions regarding his employment.

In July 2019, plaintiff married Lisa Fan, a citizen of the United States.

In August 2019, Yan directed plaintiff to report for work at Hong Kong Supermarket in Monterey Park. He did so but was given no tasks and no one provided any information about his duties, responsibilities, authority, or salary. Plaintiff was directed to sit in an executive office during business hours on his first day but on the second day was told that none of the other executives came to work and it was not necessary for him to do so.

Plaintiff was dissatisfied with the arrangement and, in late August 2019, contacted Chang, Xu, and Yan to address his concerns, including the fact that he had not been paid after working for ZHL Management for more than one month. He also requested but was not provided with a copy of the L-1A visa application. Plaintiff advised that he needed a copy of the application because his new wife planned to file a request for a green card on his behalf. Yan advised plaintiff that he could not obtain an investment-based green card if his wife were to file a spousal request for a green card.

In mid-September, plaintiff's wife filed a spousal request for plaintiff's green card with the Immigration Service. At Yan's direction, plaintiff then signed a document terminating the service agreement with J & C. Yan promised to send him a copy of the visa application but did not do so.

In mid-January 2020, plaintiff and his wife reported to the Immigration Service for an interview relating to the spousal green card application. But when the immigration officer asked plaintiff questions about the visa application submitted on behalf of ZHL Management, plaintiff was unable to confirm the information in the application. According to the immigration officer, that visa application stated that plaintiff worked at the

6

Hawaiian Gardens location of Hong Kong Supermarket, which had been closed for some time. The officer advised that the previous visa application was under investigation. During the interview, plaintiff saw the first page of the visa application and observed that his signature had been forged.

After the interview, plaintiff contacted Xu and Yan. Xu gave plaintiff a list of questions and answers he could use to prepare for any subsequent immigration interview. The answers were mostly false, however. Xu also informed plaintiff that his "investment" had been reduced to $300,000 and had been placed in the Hawaiian Gardens location of Hong Kong Supermarket which had closed in September 2019, not in the Monterey Park location as plaintiff had understood.

In late January 2020, plaintiff received a W-2 form indicating that he had been paid $25,000 by ZHL Management in 2019. But plaintiff had only received one paycheck in the amount of $4,056.39. Plaintiff's complaints to Yan went unanswered.

Eventually, in May 2020, plaintiff hired an attorney to help him obtain a copy of the visa application submitted on behalf of ZHL Management. The attorney contacted Yang, who refused to provide a copy of the application. Shortly thereafter, Yan called plaintiff and told him to stop requesting a copy of the visa application. If he did not, Yan said, she would use her connections at the Immigration Service and Xu's connections with the Chinese Embassy and the Chinese police to "resolve" the matter.

Plaintiff's attorney contacted Yang again in early June 2020 to request a copy of the visa application. Yang responded by sending the attorney a copy of a statement by defendant Qi Shen (Shen statement). The Shen statement indicated that plaintiff's

employment with ZHL Management had been terminated as of November 2019 because plaintiff had committed financial fraud in China. It also stated that ZHL Management had revoked its visa application and would notify the Chinese Embassy and Chinese Consulate of plaintiff's "current case status."

## 2. Plaintiff's Complaint

Plaintiff initiated the present action in June 2020. The operative second amended complaint includes seven causes of action. As pertinent here, the first cause of action for violation of the Immigration Consultants Act, the second cause of action for fraudulent misrepresentation, the third cause of action for fraudulent concealment, and the fourth cause of action for breach of fiduciary duty are asserted against Xu, Yan, and J & C (collectively, Xu defendants). Shen and ZHL Management are also named in the third cause of action. The fifth cause of action for violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200) is asserted against J & C and Hong Kong Supermarket. The sixth cause of action (a request for an accounting) is asserted against Hong Kong Supermarket and HZV Holding.[4] Plaintiff sought penalties under the Immigration Consultants Act, economic damages of $620,000, punitive damages, and attorney's fees.

Generally, the complaint alleges that defendants worked in concert to lure plaintiff into making an investment in one of their

[4] The seventh cause of action for legal malpractice is asserted against Yang and Pegasus Law Group. In addition, Chang, Meiju Group, and ZJL Management are named as defendants in the lawsuit. As these defendants are not parties to the present appeal, we will not discuss any claims or issues relating only to them.

8

businesses in furtherance of a plan to provide sham employment to support a falsified visa application.

### 3. The Xu Defendants' Special Motion to Strike Under Section 425.16

#### 3.1. Motion

The Xu defendants filed an anti-SLAPP motion in which Shen, ZHL Management, and Hong Kong Supermarket (collectively, Shen defendants) joined. The Xu defendants moved to strike each of the six causes of action asserted against them in its entirety on the ground that the claims target protected petitioning activity. The Xu defendants described the conduct targeted by the operative complaint as "the provisioning of lawful immigration services, following the advice of an attorney, and the submission of an immigration petition." Such conduct, they asserted, falls squarely within the protection afforded by section 425.16, subdivision (e), which defines protected activity as including "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."

In support of their special motion to strike, the Xu defendants submitted three declarations. The first, by Yang, stated that "[t]he allegations of the Second Amended Complaint are wrong. Based on [plaintiff's] relationship and duties with ZHL and any related entities as set forth in the I-129 Petition and RFE Response, there is nothing unlawful or irregular about the I-129 Petition." The second declaration, by Yan, stated that she followed the directives of Yang at all times, "did not do anything improper," and "never tried to threaten Plaintiff, at any

time or in any way. I certainly did not report Plaintiff to either the [Immigration Service] or to any Chinese authorities. The allegations in the Second Amended Complaint are not true." The third declaration, Xu's, also attested that the allegations in the operative complaint "are absolutely false." He stated, further, that J & C was "duly authorized to provide certain immigration services as a registered consultant and provided all services lawfully." In addition, and to ensure compliance with immigration laws, J & C had hired Yang to prepare and submit the L-1A visa application on behalf of ZHL Management. Like Yan, Xu denied that J & C did anything improper and further denied threatening plaintiff or contacting either the Immigration Service or Chinese authorities.

### 3.2. Opposition

Plaintiff opposed the motion, arguing as to the first prong that the Xu defendants failed to establish that their conduct was protected and, as to the second prong, that his evidence established a prima facie case sufficient to withstand the anti-SLAPP motion. Plaintiff observed that the Xu defendants' motion was vague, as it failed to specify exactly what conduct they claimed was protected petitioning activity. Further, plaintiff emphasized that his claims were not aimed at the act of filing the visa petition, but rather their acts of inducing his investment with false promises to obtain a green card. In addition, citing *Flatley v. Mauro* (2006) 39 Cal.4th 299, plaintiff argued that the Xu defendants' illegal activity, which formed the basis of his complaint against them, is not protected under the anti-SLAPP statute.

In any event, plaintiff asserted, he had established a prima facie case as to each of his claims. He submitted his own

10

declaration in support of the opposition, in which he attested to the facts stated in the complaint and set forth, *ante*. Plaintiff's attorney also provided a declaration in support of the opposition, in which she disclosed information she had discovered about the Xu defendants and their related companies.

### 3.3. Reply

In reply, the Xu defendants insisted that they provided legitimate and lawful immigration services and that plaintiff's allegations to the contrary were utterly false.

### 3.4. Ruling

The court denied the motion. The court noted that the motion broadly challenged five[5] causes of action without differentiating among them, making the court's analysis somewhat difficult. In any event, the court found that the first cause of action for violation of the Immigration Consultants Act was based on the breach of statutory duties owed to plaintiff, not any protected petitioning activity. The fourth and fifth causes of action, the court found, were predicated on that same conduct. As to the second and third causes of action for fraudulent misrepresentation and fraudulent concealment, the court observed that the thrust of plaintiff's complaint related to luring plaintiff into their investment for a green card scheme and threatening him with deportation when he was dissatisfied—not the lawful provision of immigration services. In sum, the court

---

[5] The cause of action for an accounting did not name the Xu defendants.

11

concluded, the conduct targeted by the operative complaint was not activity protected under the anti-SLAPP statute.[6]

### 4. The Shen Defendants' Special Motion to Strike Under Section 425.16

#### 4.1. Motion

The Shen defendants also filed a special motion to strike under section 425.16. The Shen defendants requested that the court strike the third cause of action for fraudulent concealment in its entirety and strike specific paragraphs of the complaint relating to their conduct. According to the Shen defendants, the allegations in the operative complaint relating to their conduct are found in paragraph 56 [Yan's phone call to plaintiff in which she threatened to use her influence with the Immigration Service and Xu's influence with the Chinese Embassy and Chinese police], paragraphs 58–61 and 83 [Yang's act of sending the Shen statement to plaintiff's counsel], paragraphs 95 and 96 [the Shen defendants' act of making the Shen statement, in furtherance of the wrongful acts of the other named defendants], and paragraphs 80–83 and 96 [the Shen defendants' participation in the overall investment and immigration conspiracy by threatening plaintiff with deportation, terminating plaintiff's employment at ZHL Management, intimidating plaintiff by suggesting they had personal influence with Chinese officials, and claiming that they revoked their visa application.] The Shen defendants asserted that each of the allegations against them

---

[6] The court went on to conclude that plaintiff had offered sufficient evidence to establish that he was likely to prevail on his claims. Because we resolve this matter at the first-prong stage, we need not discuss the court's second-prong analysis.

12

related to petitioning activity, i.e., communications with government officials, protected under Civil Code section 47, subdivision (b). In support of their motion, the Shen defendants submitted a declaration by Shen attesting that he had not contacted the Immigration Service, the Chinese Embassy or Consulate, or any other Chinese government officials about plaintiff.

### 4.2. Opposition

Plaintiff opposed the motion. In support of the opposition, plaintiff submitted his own declaration and a declaration by his attorney. Each declaration is identical to the corresponding declaration submitted in support of the opposition to the Xu defendants' special motion to strike. Plaintiff asserted that each of the Shen defendants committed acts designed to support the immigration and investment scheme developed by the Xu defendants. Specifically, plaintiff argued that Hong Kong Supermarket provided the investment opportunity, ZHL Management provided the sham employment, and Shen, as the "frontman" of ZHL Management, purportedly terminated his employment. These actions, plaintiff urged, are not protected activity and are illegal and therefore unprotected under the anti-SLAPP statute for that additional reason. In any event, plaintiff asserted, his evidence sufficiently established a prima facie case as to each of his causes of action.

### 4.3. Reply

In reply, the Shen defendants reasserted that plaintiff's claims against them arose from protected activity. They denied their conduct was illegal and, in any event, argued that plaintiff failed to make a prima facie case.

13

### 4.4. Ruling

The court denied the motion. As in its ruling on the Xu defendants' special motion to strike, the court noted that the third cause of action was predicated on the Xu defendants' immigration for investment scheme and the Shen defendants' participation in that scheme by providing the investment vehicle and sham employment, none of which is protected petitioning activity. Further, in making the Shen statement, the Shen defendants assisted the Xu defendants in their efforts to conceal plaintiff's visa application from him. And it was not evident, in any case, that the Shen statement was directed to anyone other than plaintiff. In short, the court found, the Shen statement was part of a larger conspiracy to defraud plaintiff. The court rejected the Shen defendants' further argument that the Shen statement was protected by the litigation privilege.

## 5. Appeal

The court filed its orders on the special motions to strike on March 8, 2021. The Xu defendants and the Shen defendants timely appeal.

## DISCUSSION

### 1. General Principles of the Anti-SLAPP Statute

Under the anti-SLAPP statute, a defendant may move to strike claims " 'arising from any act … in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.) Section 425.16 does not completely insulate a defendant's protected speech but instead provides a mechanism

"for weeding out, at an early stage, *meritless* claims arising from" protected activity. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

Courts apply a two-prong test when evaluating an anti-SLAPP motion. (*Baral*, *supra*, 1 Cal.5th at p. 384.) Under the first prong, the defendant must establish that the challenged claim arises from activity protected by section 425.16. (*Baral*, at p. 384) If the defendant establishes that the plaintiff's claims arise out of protected activity, the burden shifts to the plaintiff at the second prong to demonstrate a probability of prevailing on its claims. (*Ibid*.)

At the second prong, the plaintiff must make a prima facie showing of facts sufficient to sustain a favorable judgment. (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1368.) The court's analysis is similar to the evaluation of a summary judgment motion. (*Baral*, *supra*, 1 Cal.5th at p. 384.) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. [The court] accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Id*. at pp. 384–385.) If the plaintiff makes a prima facie showing of a likelihood of success, the court should deny the anti-SLAPP motion unless, as a matter of law, the defendant's evidence defeats the plaintiff's claim. (*Wong*, at p. 1368.)

We review de novo the grant or denial of an anti-SLAPP motion, and we exercise our independent judgment in determining whether the challenged claims arise from protected

15

activity. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

## 2. The court properly denied the Xu defendants' anti-SLAPP motion.

"[A] claim is subject to an anti-SLAPP motion to strike if its elements arise from protected activity. [Citation.] Courts deciding an anti-SLAPP motion thus must consider the claim's elements, the actions alleged to establish those elements, and whether those actions are protected. [Citation.]" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1015.) More particularly, at the first step of the analysis under the anti-SLAPP statute, the moving defendant carries the burden to establish that the plaintiff's claims arise out of protected activity. (*Baral, supra*, 1 Cal.5th at p. 384.) To meet that burden, the defendant must identify all allegations of protected activity in the plaintiff's complaint and the claims for relief supported by those allegations. (*Id*. at p. 396.) The defendant also must identify "the elements of the challenged claim[s] and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park, supra,* 2 Cal.5th at p. 1063.)

In their special motion to strike, the Xu defendants asserted that all of plaintiff's claims arise out of "the provisioning of lawful immigration services, following the advice of an attorney, and the submission of an immigration petition." Such conduct, they claimed, falls squarely within the protection afforded by section 425.16, subdivision (e) [defining protected activity as including "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law"]. The Xu defendants failed,

16

however, to discuss any of the specific allegations in plaintiff's complaint or connect those allegations with the five causes of action asserted against them. (See *Baral, supra*, 1 Cal.5th at p. 396.) The Xu defendants did not identify the elements of plaintiff's causes of action, nor did they explain how their alleged protected conduct established those elements. (*Park, supra*, 2 Cal.5th at p. 1063.) Moreover, the Xu defendants did not address the fact that many of plaintiff's claims are based largely, if not entirely, on allegations concerning conduct that is not protected under the anti-SLAPP statute. (See *Baral*, at p. 396 [where a complaint includes allegations arising out of protected and unprotected activity, defendant must show the challenged causes of action arise out of the protected activity].) Indeed, the thrust of plaintiff's complaint relates to a complex scheme designed to divest him of more than $600,000, based on the false promise that his so-called investment and sham employment would enable him to obtain a green card. And as we will explain, plaintiff's specific allegations about the visa application focus primarily on the fact that the Xu defendants concealed the content of the application from him—not the fact that they filed the application in the first instance.

On appeal, the Xu defendants take a similarly broad-brush approach, claiming that "[t]he entire complaint thus falls easily within the protection of the anti-SLAPP statute." But again, they do not discuss the elements of plaintiff's claims, which vary considerably. With respect to the first cause of action, for example, plaintiff must establish that the defendants violated the Immigration Consultants Act by making "false or misleading statements to a client while providing services to that client[,]" making a "guarantee or promise to a client, unless the guarantee

17

or promise is in writing and the immigration consultant has some basis in fact for making the guarantee or promise[,]" making a "statement that the immigration consultant can or will obtain special favors from or has special influence with the United States Citizenship and Immigration Services, or any other governmental agency, employee, or official, that may have a bearing on a client's immigration matter[,]" or "[charging] a client a fee for referral of the client to another for services which the immigration consultant cannot or will not provide to the client." (Bus. & Prof. Code, § 22444.) Plaintiff has alleged conduct on the part of the Xu defendants as to each of these categories, none of which involves the purportedly protected activity of "provisioning of lawful immigration services, following the advice of an attorney, [or] the submission of an immigration petition."

The Xu defendants' approach fares no better with respect to plaintiff's two fraud claims. To prevail, plaintiff must establish "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. [Citation.]" (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990.) The misrepresentations complained of in the second cause of action include, for example, that the Xu defendants promised in the service agreement to provide lawful immigration services but did not, that they promised to provide a legitimate investment and employment opportunity but did not, that they worked in concert to convince plaintiff that if he invested money with them he would be entitled to a green card, and that they would submit a visa application based on plaintiff's status as an investor but did not. Similarly, the allegations relating to the third cause of action implicate the

18

Xu defendants' collective action to conceal their wrongful acts from plaintiff by, for example, forging his signature on the visa application and refusing to provide him with a copy of the application. To the extent these allegations relate to the preparation and submission of the visa petition to the Immigration Service, they do so only tangentially. The complaint cannot be fairly read to allege that the submission of the visa petition, standing alone, is a basis for relief. (See *Baral, supra*, 1 Cal.5th at p. 394 ["Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute."].) In other words, the Xu defendants' contention that the conduct targeted by the complaint is limited to, or even focused mainly upon, the provision of lawful immigration services misrepresents the substance of the operative complaint.

Finally, and as to the fourth cause of action, the Xu defendants did not separately address the breach of fiduciary duty claim below or on appeal. We need not do so. (*Placer County Local Agency Formation Com. v. Nevada County Local Agency Formation Com.* (2006) 135 Cal.App.4th 793, 814 ["We need not address points in appellate briefs that are unsupported by adequate factual or legal analysis."].)[7]

In sum, the Xu defendants filed a cursory anti-SLAPP motion and failed to meet their burden under the first prong of the anti-SLAPP statute. The court, therefore, properly denied their motion. (See, e.g., *Symmonds v. Mahoney* (2019) 31 Cal.App.5th 1096, 1103–1104 [noting court need not reach the

---

[7] Similarly, the Xu defendants do not address the fifth cause of action for violation of the Unfair Competition Law.

second prong of anti-SLAPP analysis where moving defendant fails to establish the first prong].)

### 3. The court properly denied the Shen defendants' anti-SLAPP motion.

As noted, at the first step of the analysis under the anti-SLAPP statute, the moving defendant must establish that the plaintiff's claims arise out of protected activity. (*Baral, supra,* 1 Cal.5th at p. 384.) The Shen defendants moved to strike the third cause of action for fraudulent concealment as well as paragraphs 56, 58–61, 80–83, and 94–96 of the operative complaint on the ground that the allegations concern conduct protected under the anti-SLAPP statute and/or the litigation privilege. The elements of the cause of action are "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. [Citation.]" (*Robinson Helicopter Co., Inc. v. Dana Corp., supra,* 34 Cal.4th at p. 990.)

We first analyze the specific paragraphs the Shen defendants sought to strike. As an initial matter, we note that paragraph 56 does not include any allegations as to the Shen defendants. Instead, that paragraph relates to Yan's phone call to plaintiff in which she threatened to use her influence with the Immigration Service and Xu's influence with the Chinese Embassy and Chinese police if plaintiff continued in his efforts to obtain a copy of the visa application.

The remaining paragraphs, however, do target actions taken by the Shen defendants. Paragraphs 58–61, 81, and 95 all

20

relate specifically to the Shen statement.[8] The other paragraphs (80, 82–83, and 96) allege that the Shen statement was used to intimidate plaintiff as part of the ongoing conspiracy among all defendants to further the investment and immigration scheme.[9] With respect to the Shen statement specifically, plaintiff alleges that the content of the statement (threats to withdraw ZHL Management's visa application and threats to inform various Chinese officials about plaintiff's immigration status) was designed to discourage him from continuing to seek a copy of the visa application, i.e., to support the Xu defendants' concealment of the application.

The Shen defendants asserted that the allegations against them relate to privileged communications protected under Civil Code section 47, subdivision (b), which they claimed were necessarily protected under section 425.16. But it is not always

---

[8] The Shen statement, as translated, reads: "Based on the investigation conducted by all parties, Yanbin Zang, a former C.E.O. of ZHL Management, Inc., has been suspected of committing a serious financial fraud when he was holding the position as a senior officer of China Zhongpu Group (see the attachment), and now he has been listed as a suspect wanted by the Chinese Police. In an attitude of being responsible for ZHL Management, Inc., the Company has removed Yanbin Zang from the position as C.E.O. of ZHL Management Inc. in November 2019 and has submitted the request to the USCIS to revoke his L-1 visa petition. At the same time, ZHL Management Inc. will send a further notice to the Chinese Embassy and the Chinese Consulates in the United States regarding Yanbin Zang's current case status. [¶] This declaration is hereby made! [¶] ZHL Management Inc. CEO [¶] Shen Qi [¶] June 4, 2020[.]"

[9] The Shen defendants' appellate briefing also discusses paragraph 94 of the operative complaint. Their special motion to strike, however, did not include a request to strike that paragraph.

21

the case that conduct protected by the litigation privilege is also protected under the anti-SLAPP statute. Although there is some overlap between the litigation privilege and the anti-SLAPP statute, " '[t]he scope of the protections afforded to litigation-related communications under the anti-SLAPP statute and that afforded by the litigation privilege [citation] are not identical. The two statutes "are substantively different statutes that serve quite different purposes … ." ' [Citation.]" (*Bonni v. St. Joseph Health System*, *supra*, 83 Cal.App.5th at p. 301; cf. *Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 325 ["Civil Code section 47 does not operate as a limitation on the scope of the anti-SLAPP statute. The fact that Civil Code section 47 may limit the liability of a party that sends to an opposing party a letter proposing settlement of proposed litigation does not mean that the settlement letter is also a protected communication for purposes of section 425.16."].)

Although the Shen defendants also claim that the Shen statement is protected petitioning activity covered under the anti-SLAPP statute, they offer no legal analysis to support that contention. Nor does it appear from the face of the statute that the Shen statement is, in fact, protected activity. Section 425.16, subdivision (e), defines the conduct protected under the statute: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official

proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Plainly, the Shen statement is not included in the first category, as the statement was not made to any official body. Indeed, it is unclear from the face of the Shen statement and the supporting declaration why or in what context the Shen statement was made. The Shen statement is also not within the scope of the third and fourth categories because the Shen statement does not relate to a matter of public interest. (See, e.g., *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 145–146 ["In articulating what constitutes a matter of public interest, courts look to certain specific considerations, such as whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants' [citation]; and whether the activity 'occur[red] in the context of an ongoing controversy, dispute or discussion' [citation], or 'affect[ed] a community in a manner similar to that of a governmental entity[.]' "].) Therefore, only the second category remains, which protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).) "A statement is 'in connection with' an issue under consideration by a court in a judicial proceeding within the meaning of clause (2) of section 425.16, subdivision (e) if it relates to a substantive issue in the proceeding and is directed to a person having some

23

interest in the proceeding. [Citation.]" (*Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1167.) Here, although the Shen statement references plaintiff's visa application, it is not at all clear that the statement relates to the substantive issue under consideration in the pending immigration matter. At most, the Shen statement merely provides context for plaintiff's allegations that defendants engaged in a scheme to defraud him. Thus, the statement does not fall within the ambit of this protected category. (See *Baral, supra*, 1 Cal.5th at p. 394 [noting "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute"].)

In sum, the Shen defendants failed to establish that the operative complaint targets speech or conduct protected under the anti-SLAPP statute. Accordingly, the court properly denied their special motion to strike.

## DISPOSITION

The orders denying the special motions to strike under Code of Civil Procedure section 425.16 are affirmed. Plaintiff shall recover his costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



LAVIN, J.

WE CONCUR:

EDMON, P. J.


EGERTON, J.